DeKALB COUNTY WELFARE BOARD,
Defendant-Appellant,

v.

Vincent A. LOWER, Plaintiff-Appellee.

No. 3–482A71.

Court of Appeals of Indiana,
Third District.

Jan. 27, 1983.

Rehearing Denied March 30, 1983.

Kirk D. Carpenter, Mefford & Carpenter, P.C., Auburn, for defendant-appellant.

David A. Kruse, Kruse, Kruse & Cherry, Auburn, for plaintiff-appellee.

GARRARD, Judge.

This case arises from the trial court's decision that the DeKalb County Welfare Board (Welfare Board) improperly withheld hospitalization benefits from Vincent A. Lower (Lower).

At the time of his hospitalization Lower was twenty-seven years old, unemployed, and without financial resources. He was apparently also in ill health. On April 15, 1978 Lower was admitted to Parkview Memorial Hospital on an elective, non-emergency basis by Dr. G.M. Maldia for a "complete diagnostic work up" to determine the cause of pain in Lower's lumbro-sacral region. After numerous laboratory tests and a referral to an orthopedic surgeon, Lower was discharged from the hospital on May 1. Dr. Maldia diagnosed Lower as having "low back pain syndrome, chronic obstructive airway disease, functional bowel disease, plus depressive reaction," but neither he nor the consulting orthopedic surgeon could give an organic explanation for Lower's physical complaints. The doctors concluded that Lower's pain was caused by muscles that had been strained in a 1975 injury. The undisputed cost of Lower's treatment was $2,045.93.

On May 3, 1978, two days after his discharge from the hospital, Lower applied for assistance from the DeKalb County Welfare Board pursuant to IC 12–5–1–1 et seq.[1] to meet the expenses of his hospitalization. The Welfare Board denied Lower's application on June 27. On July 7 Lower filed his complaint with the DeKalb Circuit Court, as provided in IC 12–5–1–2, for a de novo review of the Welfare Board's decision. On November 4, 1981 the trial court entered its judgment in favor of Lower.

This appeal urges that the trial court erred as a matter of law in finding for Lower and against the Welfare Board. We agree and reverse.

The Welfare Board argues that the trial court's decision in favor of Lower is contrary to law because IC 12–5–1–1 requires that a person seeking assistance apply for it prior to receiving treatment and the record clearly discloses that Lower did not apply with the Welfare Board until two days after his release from the hospital. Lower argues, and the trial court held, that prior application is not necessary. We agree with the Welfare Board. Except in emergency situations,[2] a person must apply to his county welfare department before treatment is provided to gain the benefits provided by IC 12–5–1–1.

In interpreting IC 12–5–1–1 we are mindful that it is our duty to give the words of that statute their plain and ordinary meaning and to give effect to the intent of the legislature. *Marion Co. Dept. of Pub. Welfare v. Methodist Hosp. of Ind., Inc.* (1982), Ind.App., 436 N.E.2d 123, 126.

The initial sentence of IC 12–5–1–1 states that county departments of public welfare are empowered *to commit* a resident to a public hospital. "To commit" means to place into charge or keeping. Such placement cannot be made where, as in Lower's case, the person has already been treated and released from the hospital. Further, this section provides that upon the filing of an application by a person seeking assistance, the welfare department shall investigate the applicant's financial resources and *after* such investigation commit the appli-

1. IC 12–5–1–1 et seq. has since been repealed. The legislature enacted IC 12–5–6–1 et seq. (effective January 1, 1982) as replacement.

2. *See* IC 12–5–1–5, –6 and –15.

cant to a hospital for treatment. Finally, IC 12–5–1–2 provides that if the welfare department determines that the applicant is a proper subject for treatment, it shall notify the superintendent of the hospital which is to render treatment who will in turn notify the department regarding when the patient *may be received.* These provisions can be given effect only if the person requesting assistance applies prior to admission to the hospital.

Although we have found no cases that specifically hold that a prior application is required, we believe that inference is also supported by two recent appellate decisions. In *Marion County Dept. of Public Welfare, supra,* 436 N.E.2d 123, the Second District of this court held that when an indigent person is admitted to a public hospital on an emergency basis, the welfare department is under a statutory duty to reimburse the hospital for services provided. In the course of the opinion the court contrasted the welfare department's duty in emergency cases with its duty in cases where admission is made on a non-emergency basis. The court stated:

> "In the present case, however, [the indigent person] was not admitted to the hospital pursuant to an application made in advance with the Department *as contemplated under IC 12–5–1–1.*"

436 N.E.2d at 124 (emphasis added).

In *County Dept. of Public Welfare of Vanderburgh Co. v. Baker* (1982), Ind.App., 434 N.E.2d 958, the First District held that a welfare department may not use administratively adopted guidelines to avoid its statutory duty to pay for necessary medical costs. While the opinion does not disclose whether Baker applied for assistance prior to treatment, the court noted:

> "IC 12–5–1–1 states in pertinent part that the DPW shall investigate the financial resources of the applicant and if that applicant is financially unable to defray the necessary expense of the medical, sur-

gical and hospital care, then the DPW shall make the commitment."

434 N.E.2d at 959 (emphasis deleted).

Lower cites *Washington Twp. of Allen Co. v. Parkview Memorial Hosp.* (1969), 144 Ind.App. 359, 246 N.E.2d 391, for the proposition that "Indiana has virtually eliminated the 'prior authorization' requirement." In that case an indigent man sought aid from his township trustee to pay for hospital care for his wife after she had been hospitalized for seventy days. The court held:

> "A prior authorization by the trustee is not a prerequisite to imposition of responsibility under the statute [Section 52–148, Burns' 1964 Repl.] on the township for care of 'poor persons.' The duty exists *absque ulla conditione.*"

246 N.E.2d at 395.

Lower's reliance on this case is misplaced because the applicant in *Parkview Memorial* sought aid from his township trustee under the general poor relief statute, IC 12–2–1–6, not from the welfare department under IC 12–5–1–1. Under the poor relief statute, the township trustee has ultimate responsibility for the poor persons under his charge. Accordingly, the only relevant issue raised when a person seeks assistance from the trustee is the applicant's financial condition. *Parkview Memorial, supra,* 246 N.E.2d at 395. However, when our legislature enacted IC 12–5–1–1 *et seq.*[3] it established prerequisites to recovery separate and distinct from those of the poor relief statute. Under IC 12–5–1–1, which was the basis of Lower's suit, pre-admission authorization for treatment *is* a prerequisite to the welfare department's duty to pay for medical, surgical, and hospital care.

Lower also cites *Fayette Co. Dept. of Public Welfare v. Health & Hospital Corporation of Marion Co.* (1980), Ind.App., 405 N.E.2d 919 for the proposition that where the welfare department is not prejudiced by the indigent person's failure to comply with a statutory notice requirement, "it is unnecessary for this or any reviewing court to

---

**3.** On this point we note that IC 12–5–1–1 "did not fully shift responsibility for indigent medical care from township trustees to county de-

partments of public welfare." *Marion County Dept. of Public Welfare v. Methodist Hospital of Indiana, Inc. supra,* 436 N.E.2d at 125 n. 4.

determine whether such notice was 'prompt' as a matter of law." 405 N.E.2d at 925.

Lower argues that the Welfare Board was not prejudiced by his failure to file an application prior to entering the hospital because (1) a social worker for the hospital notified the Welfare Board of Lower's hospitalization shortly after his admission and (2) Lower submitted his application two days after his release.

Once again we believe Lower's reliance is misplaced. *Fayette County* was decided under Chapter 2 [4] of IC 12–5 (medical care for non-resident indigents) not Chapter 1, upon which the present case was decided. IC 12–5–2–1 makes no provision for prior application because the benefits of that section become available only when an indigent person is injured or becomes ill. Presumably because one does not usually know in advance when he will be injured or become ill, IC 12–5–2–1 permits a hospital or physician to report the matter to the county department of welfare within 72 hours of admission. Under IC 12–5–2–1 the welfare board is *obligated* to deny assistance.[5] Thus, regarding elective non-emergency treatment, concerns other than "reasonable notice" become important, and the "prejudice test" is inappropriate. We are left then with the statute's plain requirement of application prior to treatment.

■ Anticipating that we might hold prior application to be required by IC 12–5–1–1, Lower advances three arguments to convince us to disregard that requirement. Lower's first argument arises from the trial judge's "hint" that requiring an indigent person to apply before receiving treatment might be a denial of equal protection.[6] Following up on the judge's lead, Lower contends that it is unfair to require him to be familiar with welfare department procedure,[7] and thus, in some fashion, the pre-admission application requirement violates his right to equal protection under the law. This argument can be easily dismissed. The only distinction IC 12–5–1–1 makes between persons for purposes of eligibility to receive assistance is financial condition. Such a distinction is reasonably related to the statute's purpose and has been upheld in other contexts by our Supreme Court. *See Steup v. Indiana Housing Finance Authority* (1980), Ind., 402 N.E.2d 1215, 1222–23. Lower has not pointed to any evidence that would suggest that the statute was unconstitutionally applied to him. In fact, Lower admits in his brief that in July of 1978, when he did apply before re-entering the hospital, the Welfare Board did pay for his treatment. That fact would rebut any argument that he was singled out for disparate treatment.

■ Lower's second argument is that because of contacts between himself and the Welfare Board, where he was not told of the prior application requirement, the Welfare Board should be estopped from now denying him assistance. There were two such contacts. In the December or January preceding Lower's hospitalization, he had approached the Welfare Board to request aid in acquiring dental care. That request was denied. Then on April 20, 1978, five days after he had been admitted to the hospital, the Welfare Board sent a letter to

4. This chapter has been repealed. Hospital care for non-residents is currently provided for in IC 12–5–6–2.

5. *See Marion Co. Dept. of Public Welfare v. Methodist Hospital of Indiana, Inc.* (1982), Ind. App., 436 N.E.2d 123, 126:

"In instances where the Department is requested to make a hospital commitment upon advance application, a decision whether to admit an eligible indigent to a public hospital is discretionary. However, in emergency situations the Department is not permitted to exercise such unbridled discretion. If the emergency patient is eligible for hospitalization at public expense, the Department is under a statutory duty to reimburse the public hospital for services provided."

6. This occurred in a colloquy with the court at the time judgment was entered.

7. We do not mean by this opinion to imply that it is fair to hold indigent persons to a knowledge of the specifics of a statute or department procedure. We do believe it fair to require any person who seeks elective medical care to know that he must have some arrangement for paying the bills.

Lower acknowledging his hospitalization and advising him, without reference to IC 12–5–1–1 or any other specific statute or program, that he might be eligible for assistance under one of the department's various programs. On neither occasion was he advised that IC 12–5–1–1 applied to his case or that an application prior to admission was required to receive benefits under IC 12–5–1–1.

Had the Welfare Board affirmatively represented to Lower that a prior application was *not* required we might be disposed to accept his argument. However, the Welfare Board said nothing to him concerning the statutory requirements of IC 12–5–1–1. In the absence of any representation upon which Lower could have relied to his detriment we find no basis upon which to apply the principle of estoppel to this case.

■ Finally Lower argues that we should adopt a humane, as opposed to technical, reading of IC 12–5–1–1 and not enforce the pre-admission application requirement. In addition to recognizing that we are not free to ignore the clear dictates of a statute because we might happen to better like a different approach,[8] we do not feel that requiring application to and the approval of the Welfare Board is inhumane. On the contrary we believe that preserving Welfare Department funds by screening expenditures and thereby using money where it is most needed is eminently humane.

■ We therefore hold that for an indigent person to obtain assistance from his county welfare department under IC 12–5–1–1 to pay for medical, surgical, or hospital care, he must have submitted an application prior to receiving treatment. The trial court erred in holding that the Welfare Board was obligated to pay the expenses of

Lower's hospitalization in the absence of such an application.

The decision of the trial court is reversed.

HOFFMAN, P.J., and STATON, J., concur.

---

**8.** This observation is made no less true by the fact that IC 12–5–6–1 *et seq.,* which replaced IC 12–5–1–1, no longer requires an indigent person to apply prior to admission to the hospital. Rather, the new statute provides that the hospital shall provide the patient with a statement of the eligibility and benefit standards if the patient requests such a statement or the hospital has reason to believe the patient may be indigent. IC 12–5–6–3. The hospital then has seven days after the admission of the patient to file an application for reimbursement. IC 12–5–6–4. This application also triggers the welfare department's investigation of the patient's financial condition. Despite this change in the law we are bound to apply the law that was in effect at the time of Lower's hospitalization.