Dorothy Sue (Carey) REEVE, Allen Carey and Owen Carey, Appellants,

v.

GEORGIA-PACIFIC CORPORATION, Appellee.

No. 93A02–8701–EX–31.

Court of Appeals of Indiana, First District.

July 29, 1987.

---

Edward L. Murphy, Jr., Richard P. Samek, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for appellants.

John A. Young, Young, Cochran & Reese, Indianapolis, for appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Claimant-appellant, Dorothy Sue Carey Reeve (Dorothy), appeals an adverse ruling by the Industrial Board of Indiana (the Board) on her claim for benefits against respondent-appellee, Georgia-Pacific Corporation (Georgia-Pacific).

We reverse.

## STATEMENT OF THE FACTS

The facts are undisputed. On May 22, 1979, Arley Carey, a truck driver for Geor-

gia-Pacific, was killed in the course of his employment. He was survived by Dorothy, his widow, and six children, of which two remained dependents. The youngest, Dale Allen Carey (Allen), born on February 23, 1966, lived with his parents. Georgia-Pacific entered into an agreement approved by the Board to pay compensation at the rate of $120.00 per week for 500 weeks.

Prior to April 26, 1983, Dorothy inquired of Georgia-Pacific as to what effect, if any, a remarriage by her would have on both Allen's and her continued eligibility for compensation benefits. Georgia-Pacific responded by a letter dated April 23, 1983, as follows:

"Dear Mrs. Carey:

Thank you for your letter advising our office of your recent address change. We have reviewed your question, concerning the benefits should you remarry. We contacted the Industrial Board to make sure we had the correct information before passing it on to you. Should you re-marry at this time, any dependents that haven't reach [sic] the age of eighteen, would continue to receive this benefit.

When the child attains the age of 18, benefits will terminate if he becomes gainfully employed or if he marries. However, if he continues to go to school and you can provide proof that he is not gainfully employed, he will continue to receive the benefit.

Should you be the only remaining dependent at the time you decide to re-marry, you would receive a lump sum settlement of 104 weeks of compensation. To keep our file complete please advise if any of the childern [sic] have continued to go on to college or are employed or married. Also if you are planning to remarry, we will need the date.

Please feel free to call, if you do not understand any of the above information. We look forward to receiving the above information.

Cordially yours,

GEORGIA–PACIFIC CORPORATION

/s/ Susan Guevremont
Susan Guevremont, Claims Rep.
Worker's Compensation Claims
Mid-West District"

*Record* at 101.

In July 1983, Dorothy, as personal representative of the Estate of Arley Carey, settled a previously filed third-party suit on account of Arley's death. In reliance upon the April 23 letter she remarried on August 1, 1983. Allen reached his 18th birthday on February 23, 1984, and thereafter, on March 24, 1984, Georgia-Pacific terminated compensation. On April 19, 1984, a letter from John A. Young of the law firm of Rocap, Rocap, Reese & Young, representing Georgia-Pacific, was sent to Dorothy explaining that the compensation was terminated because she had remarried and Allen had reached the age of 18. No other cause was given.

After graduation from high school in May 1984, and a brief period of employment, Allen, in September 1984, enrolled in Vincennes University as a full-time student, and he continued in school for the times relevant here. Dorothy filed her Form #10 application with the Board claiming the continuance of the compensation for Allen. The Hearing Member entered an order, as relevant here, which granted retroactive compensation on account of Allen from March 24, 1984, until the effective date of the order, March 6, 1986, in a lump-sum, plus payments at the rate of $120.00 per week to continue until one of the following events occurred: (1) payment for the full 500 weeks; (2) the total emancipation of Allen; (3) his graduation with a degree, (4) his discontinuance as a full-time student; or (5) his obtaining full-time employment prior to graduation. Upon appeal, the Full Board, two members dissenting, reversed this award of the Hearing Member and terminated compensation.

## ISSUES

Dorothy presents the following two issues for review:

I. Whether Allen is a dependent-in-fact, pursuant to IND.CODE 22–3–3–20,

and therefore, entitled to receive compensation as a result of Arley Carey's death.

II. Whether Georgia-Pacific is estopped from terminating workmen's compensation benefits to Allen as a result of its letter to Dorothy dated April 26, 1983.

### DISCUSSION AND DECISION

#### ISSUE I: *Dependency-In-Fact*

IND.CODE 22–3–3–18 creates three classes of dependents: presumptive dependents, total dependents-in-fact, and partial dependents-in-fact. Presumptive dependents are defined in IND.CODE 22–3–3–19 as follows: in subsection (a) as a wife; in subsection (b) as a husband; in subsection (c) and (d) as an unmarried child under the age of 18 who is dependent; in subsection (e) as a child over 18 who has never been married and who is either mentally or physically incapacitated; and in subsection (f) as a dependent child over 18 who has never been married and who is not gainfully employed. Clearly, Allen was a presumptive dependent and under subsection (c) was entitled to compensation, completely excluding a consideration of whether he was a total or partial dependent-in-fact. IND. CODE 22–3–3–19 also addresses the termination of compensation of a presumptive dependent:

"The dependency of a child under subsections (c) and (d) of this section shall terminate when such child attains the age of eighteen (18).

The dependency of any person as a presumptive dependent shall terminate upon the marriage of such dependent subsequent to the death of the employee, and such dependency shall not be reinstated by divorce. However, for deaths from injuries occurring on and after July, 1977, a surviving spouse who is a presumptive dependent and who is the only surviving dependent of the deceased employee is entitled to receive, upon remarriage before the expiration of the maximum statutory compensation period, a lump sum settlement equal to the smaller of one hundred four (104) weeks of compensation or the compensation for the remainder of the maximum statutory compensation period. The dependency of any child under subsection (f) of this section shall be terminated at such time as such dependent thereunder becomes gainfully employed or marries."

The definition and rights of dependents-in-fact are stated in IND.CODE 22–3–3–20:

"Total or partial dependents in fact shall include only those persons related to the deceased employee by blood or by marriage, except an unmarried child under the age of eighteen (18) years. Any such person who is actually totally or partially dependent upon the deceased employee is entitled to compensation as such dependent in fact. The right to compensation of any person totally or partially dependent in fact shall be terminated by the marriage of such dependent subsequent to the death of the employee and such dependency shall not be reinstated by divorce."

Dorothy argues that pursuant to the above statutes, Allen was a dependent-in-fact, as well as a presumptive dependent, and he is entitled to receive compensation after the age of 18. We disagree. Dependency is determined at the date of death of the employee. Once the right to dependent's benefits is established, payments are thereafter terminated if the conditions enumerated in the statute occur. Those conditions are absolute and there is no provision in the statute for a redetermination of actual dependency. *Sam Winer & Co. v. Spelts* (1976), 169 Ind.App. 392, 348 N.E.2d 670; *Studebaker Corp. v. Anderson* (1932), 96 Ind.App. 215, 183 N.E. 408. *See also B. Small, Workmen's Compensation Law*, sec. 10.9 at 287 (1950) (if conditions are met, presumption is conclusive); *Carnegie-Illinois Steel Corp. v. Papuschak* (1943), 114 Ind.App. 233, 51 N.E.2d 875 (where facts are uncontroverted, dependency is a question of law).

Dorothy presents no authority to support her position. We are of the opinion that the statute is clear and there is no need for statutory construction. Her argument on this issue is not well taken.

ISSUE II: *Estoppel*

Dorothy claims that Georgia-Pacific is estopped from denying benefits because of its letter of April 23, 1983. In its findings the Full Board found that the letter had been written and that Dorothy mistakenly believed that compensation would continue if Allen was a college student after the age of 18, whether or not she remarried. It also found, "It is too speculative to determine whether or not, as she claims, that she would not have remarried, and would have declined settlement, to assure a continued compensation, as a widow during the student days of the child." *Record* at 56. It found that Georgia-Pacific was not estopped to assert its defense because the mistake was a mistake of law by Dorothy. Georgia-Pacific concedes that the letter was a misrepresentation, but argues that it was not a proper basis for estoppel because: (1) it was a mistake of law; (2) both parties had equal knowledge of the facts; (3) the misrepresentation was not of past or existing fact, but was a future promise; and (4) Georgia-Pacific believed its information was correct.

In *AAA Wrecking Co. v. Barton, Curle and McLaren, Inc.* (1979), 182 Ind.App. 418, 395 N.E.2d 343, the court set forth the general rules of equitable estoppel as follows:

"Since AAA had the burden of proof on the issue of estoppel at trial, its appeal is one from a negative finding. As such, the finding may only be disturbed as being contrary to law where the evidence is without conflict and leads to but one conclusion and the trial court reached an opposite conclusion. *Link v. Sun Oil Co.* (1974), 160 Ind.App. 310, 312 N.E.2d 126.

The facts necessary to establish equitable estoppel were defined in *Emmco Insurance v. Pashas* (1967), 140 Ind.App. 544, 224 N.E.2d 314 as follows:

'(1) A representation or concealment of material facts;

(2) The representation must have been made with knowledge of the facts;

(3) The party to whom it was made must have been ignorant of the matter;

(4) It must have been made with the intention that the other party should act upon it;

(5) The other party must have been induced to act upon it.'

140 Ind.App. at 551, 224 N.E.2d at 318. In *Phar-Crest Land Corp. v. Therber,* (1969) 251 Ind. 674, 244 N.E.2d 644, our Supreme Court noted that one asserting the defense of estoppel carries the burden of proving a fraudulent representation or such negligence as will amount to fraud in law. The 'fraud' may be 'constructive' in a sense that there may not be any active intentional purpose to deceive or defraud, yet the action is so prominent and misleading as to induce detrimental reliance. The court in *Phar-Crest Land Corp.* cited with approval the statement found in *Pitcher v. Dove,* (1884) 99 Ind. 175, at 177, 178:

' * * * It is well settled that there need not be any design to defraud in order to constitute an estoppel. It is sufficient if the conduct of the party has been knowingly such as would make it unconscionable on his part to deny what his conduct had induced another to believe and act upon in good faith and without knowledge of the facts.' "
(Footnote omitted.)

182 Ind.App. at 420–22, 395 N.E.2d at 345.

The elements which comprise the equitable estoppel defense are essentially those which would give rise to a claim for actual or constructive fraud. *In re Marriage of Murray* (1984), Ind.App., 460 N.E.2d 1023. Therefore, we cite cases involving fraud as they are interchangeable on this issue.

It is generally stated that estoppel arises upon the misrepresentation of past or existing facts and not upon promises to be performed in the future, expressions of opinion, or misrepresentations as to the state of the law. *Travelers Protective Association of America v. Smith* (1914), 183 Ind. 59, 107 N.E. 283; *Snyder v. Studebaker* (1862), 19 Ind. 462; *Peoples Trust Bank v. Braun* (1983), Ind.App., 443 N.E.2d 875; *Plymale v. Upright* (1981), Ind.App. 419 N.E.2d 756; *Hall v. Indiana Department*

*of State Revenue* (1976), 170 Ind.App. 77, 351 N.E.2d 35; *Martin v. Grutka* (1972), 151 Ind.App. 167, 278 N.E.2d 586. Negligence can be the basis of estoppel. *Associates Investment Co. v. Shelton* (1952), 122 Ind.App. 384, 105 N.E.2d 354; *Central Finance Co. of Peru, Inc. v. Garber* (1951), 121 Ind.App. 27, 97 N.E.2d 503. Estoppel has no application where the facts were known equally by both parties, or the party sought to be estopped was ignorant of the facts. *Ross v. Banta* (1894), 140 Ind. 120, 39 N.E. 732. Nevertheless, these general rules are riddled with exceptions.

In *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, 437, the court, stating that the distinction between fact and opinion has long since been regarded as a legal absurdity, held that the mere fact that a statement takes the form of expression of opinion is not always conclusive, but must be interpreted by the facts and circumstances. In *Montgomery Ward & Co., Inc. v. Tackett* (1975), 163 Ind.App. 211, 221, 323 N.E.2d 242, 249, the court observed that "[t]he rule that actionable fraud cannot be based upon the mere expression of an opinion has been qualified until now, an expression of an opinion may amount to fraud. . . ."

■ One of the exceptions to the general rule is where the party expressing the opinion claims or expresses a special knowledge. 31 *C.J.S. Estoppel* sec. 79 (1964). That rule found application in *Delaware County v. Powell* (1979), 272 Ind. 82, 393 N.E.2d 190; *Kinney v. Dodge* (1885), 101 Ind. 573; *DeKalb County Welfare Board v. Lower* (1983), Ind.App., 444 N.E.2d 884; *Central Indiana Carpenters Welfare Fund v. Ellis* (1980), Ind.App., 412 N.E.2d 865; and *Vernon Fire & Casualty Co. v. Thatcher* (1972), 152 Ind.App. 692, 285 N.E.2d 660, *reh. denied,* 152 Ind.App. 692, 287 N.E.2d 776, *trans. denied,* 260 Ind. 55, 292 N.E.2d 606. Expression of an opinion as to the law is a part of the rule concerning expressions of opinion and is included in this discussion.

In *Vernon,* where an agent misrepresented the coverage afforded by an insurance contract, the court said:

"We recognize, however, that the legal effect of a contract, or of a particular provision of a contract, can often be a matter of uncertainty. In such a case one may in all honesty, candor, and sincerity, state his opinion predicting the ultimate interpretation without thereby making a statement of fact. But what may subjectively be merely an opinion can, nevertheless, be stated as a present existing fact. If the statement thus made as a representation is not true, but is *justifiably* relied on as being true, deceit has been practiced. If damage results, liability cannot be avoided on the ground that what was stated as a fact was subjectively intended as merely an opinion."

152 Ind.App. at 707, 285 N.E.2d at 669.

The court also held that coverage was a fact known to Vernon and its agents, and if they were subjectively stating mere opinions, they were reckless in stating them as facts without having first ascertained the truth. *Id.* at 708, 285 N.E.2d at 670.

In *Ellis,* equitable estoppel was applied where the administrator of the Carpenters Welfare Fund led a member, to his detriment, to believe he had coverage. In *DeKalb* the welfare department failed to advise a claimant of the necessity of filing an application for benefits. There, the court found no estoppel, but said:

"Had the Welfare Board affirmatively represented to Lower that a prior application was *not* required we might be disposed to accept his argument."

444 N.E.2d at 888.

In *Delaware County,* the tort claim plaintiff failed to file her notice within 180 days. The court found estoppel in the conduct of the commissioners and the adjusters in misleading the plaintiff, to her detriment, by telling her she had two years to file her claim without also telling her of the 180–day notice requirement.

Finally, in *Kinney,* the defendant, an attorney, made certain misrepresentations to a non-attorney plaintiff concerning the validity of liens, and in reliance thereon, the plaintiff paid them. After reciting the general rule the court held that representa-

tions as to the law made by an attorney can amount to remedial fraud.

It is not shown in the record whether Susan Guevremont was or was not an attorney. However, under *Vernon, Ellis, DeKalb,* and *Powell,* that fact was not controlling. The misrepresentations in *Vernon* and *Ellis* concerned opinions by persons possessed of superior knowledge as to rights for benefits, as here. *Powell* concerned the necessity of filing a tort claim notice. *DeKalb* concerned the statutory necessity of filing a prior application. All these representations were of matters of law. Additionally, as in *Vernon,* the April 23, 1983 letter was not stated as an opinion, but as a fact.

■ We hold that the Board erred in holding that estoppel was not available to Dorothy because the misrepresentation was one of law.

■ Georgia-Pacific argues that estoppel is not applicable because the misrepresentation was not one of existing or past fact, but was one of a future promise. We disagree. The doctrine of promissory estoppel exists in Indiana. This too is an exception to the general rule. Representations as to future acts, or promises, have been enforced or permitted to operate as a basis of equitable estoppel if to do otherwise would help perpetuate a fraud or cause injustice in a case where the representation or promise has been made to induce action, or is reasonably calculated to induce action, and has in fact induced action on the part of the party claiming the estoppel. 31 *C.J.S. Estoppel* sec. 80 (1964). In *Citizens State Bank v. Peoples Bank* (1985), Ind.App., 475 N.E.2d 324, 327, where one bank promised to release its lien on certain chattels, and the second bank, in reliance thereon, acquired a lien, we said:

"Indiana follows the format of promissory estoppel embodied in Section 90 of the Restatement of Contracts and set out in *Lyon [Metal Products v. Hagerman Construction Corp.* (1979), Ind.App., 391 N.E.2d 1152]:

'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substan-

tial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by the enforcement of the promise.'

391 N.E.2d at 1154.

Promissory estoppel is most often applied where one party signifies his intention to abandon an existing right, leading another to act to his detriment in the event such right is subsequently asserted. *Drake v. Eggleston,* (1952) 123 Ind. App. 306, 108 N.E.2d 67. Here, Peoples signified its intention to release Bode's equipment leading Citizens to use it as collateral for the renewal of its loan to Bode.

The promisor need not receive any benefit or consideration from the transaction. *Lyon, supra.* Actual fraud on the part of the promisor is not a requisite but there must be some false representation or concealment of facts. *Lacy v. Wozencraft* (1940), 188 Okl. 19, 105 P.2d 781. Whether Spurgeon's handwritten statement 'We will release these items' constitutes a misrepresentation of current fact or an unfulfilled promise as to future action is irrelevant to the application of promissory estoppel." (Footnote omitted.)

■ Pursuant to the above authorities, Georgia-Pacific's argument is not well taken. The true posture of this case is that Georgia-Pacific, by its claims representative, made representations to Dorothy as to what Georgia-Pacific would do in the event she remarried. Dorothy did remarry, thus giving up her right to the balance of the 500 weeks in favor of the payments being made for the benefit of Allen. Georgia-Pacific is now estopped from taking a contrary position.

■ Georgia-Pacific next argues that the letter did not create an estoppel because it believed that the information was correct. Actual intent to defraud is not essential. *See AAA Wrecking, supra.* The April 23, 1983 letter was sent by Georgia-Pacific over the signature of the "Claims Rep., Worker's Compensation

Claims, Mid-West District." *Record* at 101. The record does not reflect, nor do we comprehend, how a person presumedly qualified for such a position could conclude that IND.CODE 22-3-3-18, -19, and -20 would provide for continuing benefits for a presumptive dependent after the age of 18, even though such dependent was enrolled in college. Nevertheless, the claims representative did so conclude, and the letter was sent. Clearly, the conduct falls within the ruling of *Vernon, supra.* Understandably, Dorothy, a widowed housewife who was not privy to the esoteric concepts and mysteries of workmen's compensation, upon receiving such a letter reciting her rights as fact which were against the interests of Georgia-Pacific, accepted it as true, and acted upon it. This argument is not valid.

Finally, Georgia-Pacific argues that Dorothy's settlement with the third-party defendant bars recovery. We have examined the record and the only issues existent at the Board level are the ones argued here. Neither the Hearing Member nor the full Board made any reference to this defense, though there was evidence that settlement occurred. Georgia-Pacific raises it for the first time on appeal. A litigant must first raise and litigate an issue in trial court before he can present it on appeal. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701. In *Miller,* the failure to raise the defense of governmental immunity effected a waiver of it on appeal. The case of *Frazier v. Whited* (1938), 106 Ind.App. 57, 16 N.E.2d 974, applied the rule to defenses before the Industrial Board.

For the above reasons this cause is reversed. The Board is directed to affirm the decision of the Hearing Member.

Judgment reversed.

RATLIFF, C.J., and STATON, J., concur.