## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 06 2017, 8:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph M. Johnson, II
Joseph M Johnson, P.C.
Decatur, Indiana

ATTORNEY FOR APPELLEE

Kelly N. Bryan
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Angela Locker,

*Appellant-Petitioner,*

v.

Roger Locker,

*Appellee-Respondent.*

March 6, 2017

Court of Appeals Case No. 01A05-1610-DR-2315

Appeal from the Adams Circuit Court

The Honorable Kenton W. Kiracofe, Special Judge

Trial Court Cause No. 01C01-1407-DR-56

**Bradford, Judge.**

# Case Summary

[1] Appellant-Petitioner Angela Locker ("Wife") married Appellee-Respondent Roger Locker ("Husband") on September 30, 2011. Wife filed a petition seeking the dissolution of the parties' marriage (the "Dissolution Petition") on July 11, 2014. Following an evidentiary hearing on Wife's petition, the trial court entered an order dissolving the parties' marriage and dividing the parties' property (the "Dissolution Order"). On appeal, Wife contends that the trial court abused its discretion by failing to enter judgment against Husband for (1) the sum of health insurances premiums which Wife paid on Husband's behalf, (2) one-half of the parties' joint tax returns, and (3) Husband's failure to maintain a savings account to assist in the payment of the parties' living expenses. Finding no error by the trial court, we affirm.

# Facts and Procedural History

[2] Husband and Wife were married on September 30, 2011. At the time of their marriage, Wife was a French teacher at North Adams Community Schools and owned a four-bedroom home. Husband owned and operated a retail sales business located in Jay County known as "Locker's Touch of Country Gifts." Tr. p. 105. Husband had owned and operated this business for more than forty years. He lived in a home on a forty-acre farm that he owned near Portland, Indiana.

## A. The Parties' Prenuptial Agreement

On September 29, 2011, the day prior to their marriage, the parties entered into a prenuptial agreement ("the Agreement"). The Agreement disclosed that Husband's net worth was $534,020.00 and Wife's was $359,500.00. Pursuant to the terms of the Agreement, the parties agreed that "neither one *shall have or acquire* any right, title or claim in and to the real or personal estate of the other[.]" Petitioner's Ex. 1, p. 3 (emphasis added).

## B. The Parties' Living Arrangements and Expenses

Following their marriage, the parties agreed that they would reside in Wife's home. Wife continued to pay the monthly mortgage payments as well as real estate taxes, insurance, and other household expenses. Wife asserts that all told, she paid $75,306.65 in utility, mortgage, food, and household expenses during the parties' marriage. Husband asserts that, while he did not keep track of the exact amount, he also paid for a portion of the parties' living expenses.

## C. Payment of Health Insurance Premiums

Also following the parties' marriage, Wife obtained health insurance coverage for Husband through her employer. Wife added Husband to her insurance policy beginning January 1, 2012. Wife maintains that Husband agreed to pay the difference between the cost for her coverage and the cost of adding him to the plan. Wife further maintains that Husband reimbursed Wife for the first three months of coverage, but failed to do so thereafter, claiming that his business was doing poorly and he would pay it later when he had the money.

Wife was forced to retire during the summer of 2013, due to an unforeseen illness. Consequently, Wife's employer no longer paid any portion of the health insurance premiums. Thus, in order to maintain health insurance coverage, Wife was required to pay the full premium amount. Wife continued to pay Husband's premiums throughout the parties' marriage until December 31, 2014.

## D. Income Tax Returns

The parties filed a joint federal income tax return for the 2011 tax year. During that year, a total of $8418.00 was withheld from Wife's salary. The parties received a tax refund of $6014.06, which was direct-deposited into the parties' joint checking account at the First Bank of Berne. Wife asserts, however, that she was unaware that the parties had received a refund. In making this assertion, Wife claims that Husband told her that they were not going to receive any refund because the funds that would have constituted their refund had been taken by the IRS to satisfy his back taxes.

The parties again filed a joint federal income tax return for the 2012 tax year. During that year, a total of $7423.00 was withheld from Wife's salary. Husband reported financial losses and had no taxable income for this year. The parties received a refund of $6922.02, which was direct-deposited into the parties' joint checking account at the First Bank of Berne. After receiving the refund, Husband obtained two cashier's checks, each in the sum of $3400.00. Husband gave one of these checks to Wife.

[9] The parties again filed a joint federal income tax return for the 2013 tax year. During that year, a total of $9963.00 was withheld from Wife's income. The parties received a refund of $9475.00, which was direct-deposited into the parties' joint checking account at the First Bank of Berne. After receiving the refund, Husband withdrew a total of $8600.00 of the refund.

[10] At all times during the parties' marriage, Wife had access to the parties' joint checking account[1] and did, in fact, at least occasionally use the funds in the account to make purchases. Wife acknowledged that during the years in question, Husband's business losses allowed the parties to receive a larger tax refund than they otherwise would have. The parties did not present any evidence relating to what Wife's tax liability or refund would have been had she filed a separate tax return.

## E. Husband's Farm

[11] The farm was property covered by the parties' Agreement, meaning that Wife did not have any interest in the property. The section of the parties' Agreement entitled "Wife's Release of Rights in Husband's Property" indicated that Wife "further agrees, in the event of a dissolution of the parties' marriage … that she will make no claim for support, maintenance, alimony, attorney fees, costs or division of property as to any property, either real or personal, held in the name of [Husband]." Petitioner's Ex. 1, p. 3. The Agreement further stated that "[i]t

---

[1] This access included both checks and a debit card.

is mutually declared that it is the intent of both parties that by virtue of said marriage neither one *shall have or acquire* any right, title or claim in and to the real or personal estate of the other[.]" Petitioner's Ex. 1, p. 3 (emphasis added).

[12] At some point during April of 2013, Husband sold the 40-acre farm. As a result of the sale of the farm, Husband received semi-annual cash payments. At the time of the sale of the farm, Husband opened a Crossroads Credit Union Account ("Crossroads Account"), into which he placed at least one of the payments received in relation to the sale of the farm. Husband used the funds in the Crossroads Account to pay for expenses incurred by him and Wife, such as dinners out and a trip to Dayton. In April of 2014, at Wife's insistence, Husband added Wife's name to the Crossroads Account. Husband testified that to his knowledge, the only money ever deposited into the Crossroads Account were the funds received in connection to the sale of the farm.

## F. Dissolution Proceedings

[13] On July 11, 2014, Wife filed the Dissolution Petition. In this petition, Wife requested that the trial court enter an order dissolving the parties' marriage, "that the marital estate be divided consistent with the parties Pre-Nuptial Agreement dated September 29, 2011 and for all other relief just and proper in the premises." Appellant's App. Vol. II, p. 27. The trial court subsequently conducted an evidentiary hearing during which the parties presented evidence and argument.

[14]     Following the evidentiary hearing, the trial court issued the Dissolution Order. In this order, the trial court found as follows:

> 22.     Wife seeks a total judgment against Husband and in favor of Wife in the amount of $71,690.22.
> 23.     Wife's request is made up of a complete return of $22,404.00 from the tax refunds during the marriage; a complete repayment of the health insurance premiums, $22,796.84; and, one-half of the proceeds from the sale of Husband's real estate, $26,759.38.
> 24.     Regarding the tax returns, the Court notes that [the] refund was higher because of Husband's business losses. Presumably, Wife reviewed and signed the tax return each year and had the opportunity to see for herself whether or not the parties would in fact receive a tax refund. Further, the tax refund was deposited into a jointly held bank account, where Wife had the ability to review and make withdraws. The Court denies Wife's request to return the entire tax refund to her.
> 25.     Regarding the proceeds from the sale of Husband's real estate, the Court finds that as of the date of filing the joint bank account holding the asset was overdrawn, therefore, there is no asset to divide. Rather there is a debt to divide. The Court orders that Husband be responsible for the liability created by the overdrawn account in the amount of $1,124.15.
> 26.     Finally regarding reimbursement for health insurance premiums. Wife testified that she only provided health insurance for Husband because he represented he would repay her. However, Husband only repaid her for the first three (3) months. Therefore, Wife continued to provide insurance for nearly three (3) years, despite not being repaid. Presumably, Wife could have canceled the family insurance plan at the next renewal date at the latest or immediately once Husband failed to pay her back. The Court finds that Wife failed to meet her burden to establish equitable estoppel.
> 27.     The Court does find that Wife continued to provide health insurance for several months after the dissolution action was

filed. The Court therefore finds that Husband shall reimburse Wife the sum of $5,412.06 within thirty (30) days of this Order.

28. Wife makes a claim for $9,484.80 in attorney fees from Husband; however, the parties' Prenuptial Agreement states as follows: "The Prospective Wife further agrees, in the event of a dissolution of the parties' marriage … that she will make no claim for … attorney fees …" Therefore the Court denies Wife's request for attorney fees.

29. Husband is ordered to remove all of his personal property from Wife's premises. Husband shall contact Wife's attorney within thirty (30) days of [t]his order to determine appropriate time and dates. All property shall be removed within sixty (60) days of this order. Any property remaining on Wife's premises after the expiration of sixty (60) days may be disposed of as Wife pleases. Husband shall be responsible for any costs incurred by Wife in disposing of said property.

IT IS THEREFORE ORDRED, ADJUDGED AND DECREED, as follows:

1. The marriage of the parties, being irretrievably broken, is dissolved and Wife's former name of Angela Johnson is restored to her.

2. All property owned by the parties prior to their marriage, as described in their Prenuptial Agreement together with all property acquired with the proceeds of the sale of any such property during the marriage, shall be and remain their sole and separate property, respectfully.

3. Judgment in the sum of $5,412.06 is awarded in favor of Wife, Angela (Locker) Johnson, and against Husband, Roger Locker, which shall accrue interest as provided by law until paid in full. Said judgement shall be paid in full within thirty (30) days from the date hereof.

4. Husband shall make payment of $1,124.15 to the First Bank of Berne to satisfy the overdrawn joint checking account within thirty (30) days from the date hereof.

5. Each party shall execute and deliver any document and/or take any and all action necessary to carry out the terms of this decree.

Appellant's App. Vol. II, pp. 13-14. This appeal follows.

# Discussion and Decision

Wife contends that the trial court erred in failing to enter judgment against Husband for (1) the sum of health insurance premiums which Wife paid on Husband's behalf, (2) one-half of the parties' joint tax returns, and (3) Husband's failure to maintain a savings account to assist in the payment of the parties' living expenses. We will discuss each contention in turn.

# I. Standard of Review

The trial court entered factual findings and conclusions thereon sua sponte in the Dissolution Order.

> In such a situation, the specific factual findings control only the issues that they cover, while a general judgment standard applies to issues upon which there are no findings. *C.B. v. B.W.*, 985 N.E.2d 340, 344 (Ind. Ct. App. 2013), *trans. denied*. It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record. *Id*. We may affirm a general judgment with sua sponte findings upon any legal theory supported by the evidence introduced at trial. *Id*. Although sua sponte findings control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court. *Id*.
>
> As for review of the accuracy of findings that have been entered,

we first consider whether the evidence supports them. *Id*. Second, we consider whether the findings support the judgment. *Id*. We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference. *Id*. A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we do not defer to a trial court's legal conclusions. *Id*. However, we must give due regard to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of the judgment. *Id*.

We also note that we "give considerable deference to the findings of the trial court in family law matters...." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). Whether reviewing a case for "clear error" or "abuse of discretion," this appellate deference is, first and foremost, a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility and the like. *Id*. at 940-41. "Secondly, appeals that change the results below are especially disruptive in the family law setting." *Id*. at 940. "But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result." *Id*. at 941.

*Stone v. Stone*, 991 N.E.2d 992, 998-99 (Ind. Ct. App. 2013).

# II. Analysis

## A. Estoppel

"Estoppel is a judicial doctrine sounding in equity." *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001). "There are a variety of estoppel doctrines including: estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel—

also referred to as estoppel *in pais*, promissory estoppel, and judicial estoppel." *Id*. at 52 (citing 28 Am. Jur. 2d ESTOPPEL and WAIVER § 2 (2000)) (emphasis in original). Although each species of estoppel is related, each represents a separate legal theory which may be asserted by a party.[2]

[18] Initially we note that at trial, Wife argued that she was entitled to recover from Husband under a theory of equitable estoppel. On appeal, however, Wife claims that she is entitled to recover from Husband under a theory of promissory estoppel. While Wife acknowledges that she did not argue promissory estoppel below, she claims on appeal that promissory estoppel better fits the situation. As such, she argues that we should apply the doctrine of promissory estoppel to our review of the trial court's order.

[19] To the extent that Wife argues that the trial court erred by failing to apply the principles of promissory estoppel rather than the argued principles of equitable estoppel, we cannot say that the trial court erred by failing to apply legal principles which were not argued before the court by the parties. Further, to the extent that Wife claims that she is entitled to relief under the principles of

---

[2] For instance, equitable estoppel is available only as a defense and "'[t]he party claiming equitable estoppel must show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially.'" *Lockett v. Planned Parenthood of Ind., Inc.*, 42 N.E.3d 119, 136 (Ind. Ct. App. 2015) (quoting *Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544, 547 (Ind. 2006)). The doctrine of promissory estoppel, on the other hand, "encompasses the following elements: (1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promise (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *1ˢᵗ Nat. Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991). "Promissory estoppel is an exception to the general rule that estoppel is not available upon promises to be performed in the future." *Id.*

promissory estoppel on appeal, such claims are waived as they were not raised before the trial court. *See In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001) (providing that an issue is waived if raised for the first time on appeal).

## B. Health Insurance Premiums

[20] Wife contends that the trial court erred by failing to enter judgment against Husband for the $22,796.84 that she paid in health insurance premiums on his behalf. In support, Wife claims that Husband had agreed to reimburse her for these costs, but that he only did so for the first three months of coverage. Review of the record reveals that Wife argued before the trial court that she was entitled to recover the $22,796.84 in health insurance premiums under the argued theory of equitable estoppel. The trial court considered this argument but found that Wife had failed to prove that she was entitled to repayment of the requested funds under this theory.

[21] The basis for a claim of equitable estoppel "is fraud, either actual or constructive, on the part of the person estopped. *Lockett*, 42 N.E.3d at 136 (citing *Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990)). A claim of equitable estoppel is available only as a defense. *Id*. at 135. Wife, as the party claiming equitable estoppel had the burden to prove "all facts necessary to establish it." *Id*.

> The facts necessary to establish equitable estopped were defined in *Emmco Insurance v. Pashas* (1967), 140 Ind. App. 544, 224 N.E.2d 314 as follows:

(1) A representation or concealment of material facts;
(2) The representation must have been made with knowledge of the facts;
(3) The party to whom it was made must have been ignorant of the matter;
(4) It must have been made with the intention that the other party should act upon it;
(5) The other party must have been induced to act upon it.

140 Ind. App. at 551, 224 N.E.2d at 318.

*Reeve v. Georgia-Pac. Corp.*, 510 N.E.2d 1378, 1382 (Ind. Ct. App. 1987) (internal quotation marks omitted). Generally, a claim of equitable estoppel "arises upon the misrepresentation of past or existing facts and not upon promises to be performed in the future, expressions of opinion, or misrepresentations as to the state of the law." *Id.*

[22] While Wife might have relied on Husband's alleged assertion that he would repay her for the health insurance premiums in question, Wife did not point to any evidence indicating fraud or a lack of knowledge as to the facts in question. The record reveals that Wife was aware that Husband's business was struggling and that Husband, as a result, was unable to repay her for the health insurance premiums. Wife's claimed reliance did not arise from a misrepresentation of past or existing facts, but rather upon alleged promises to be performed in the future. Further, the record is devoid of any evidence suggesting that given her knowledge of Husband's financial situation, Wife could not have canceled Husband's health insurance once it became clear that he was not able to repay her for the premiums. Based on these facts, we cannot say that the trial court's

determination that Wife failed to prove that she was entitled to recover the requested health insurance premiums under a theory of equitable estoppel was clearly erroneous.

[23] Wife argues that this court should consider her payment of the health insurance premiums in question to be a loan to Husband. Wife's argument on appeal is based on a theory of promissory estoppel. Again, because Wife did not raise this theory of recovery below, she is precluded from successfully asserting this theory of recovery on appeal. *See In re K.S.*, 750 N.E.2d at 834 n.1.

## C. Tax Refunds

[24] Wife also contends that the trial court erred by failing to enter judgment against Husband for $7744.53, *i.e.*, half of the tax refunds received by the parties in relation to the 2011 and 2013 tax years. In support, Wife claims that she and Husband had agreed to split the returns but that Husband had used the full amount for his own personal benefit.

[25] With respect to the parties' tax refund for the 2011 tax year, the evidence indicates that the parties filed a joint federal income tax return. During that year, a total of $8418.00 was withheld from Wife's salary. The record is silent as to whether any money was withheld from Husband's earnings, or whether Husband even received any calculated earnings during this year. The parties received a tax refund of $6014.06, which was direct-deposited into the parties' joint checking account at the First Bank of Berne.

[26] With respect to the parties' tax refund for the 2013 tax year, the evidence indicates that the parties again filed a joint federal income tax return for the 2013 tax year. During that year, a total of $9963.00 was withheld from Wife's income. Husband did not receive any calculated earnings during this year as his business operated a loss. The parties received a refund of $9475.00, which was direct-deposited into the parties' joint checking account at the First Bank of Berne. After receiving the refund, Husband withdrew a total of $8600.00 of the refund. It is of note, however, that Wife has failed to point to any evidence suggesting that these funds were not used for a marital purpose.[3]

[27] On appeal, Wife asserts that she did not receive any of the tax refunds received for the 2011 or 2013 tax years. In fact, Wife asserts that she was not even aware that the parties had received a tax refund for the 2011 tax year. This claim is difficult to believe, however, given that it seems that Wife would have had to have signed the parties' joint return before it was filed. Further, at all times during the parties' marriage, Wife had access to the parties' joint checking account and did, in fact, at least occasionally use the funds in the account to make purchases. In addition, Wife acknowledged that during the years in question, Husband's business losses allowed the parties to receive a larger tax refund than they otherwise would have as it reduced their tax liability. The

---

[3] Wife makes the assertion on appeal that the parties had not intended to use their tax refunds for any marital purpose. Wife, however, does not cite to any evidence which would tend to support this assertion.

record is devoid of any evidence relating to what Wife's tax liability or refund would have been had she filed a separate tax return.

[28] With respect to the parties' tax returns, the trial court found as follows:

> 24.    Regarding the tax returns, the Court notes that [the] refund was higher because of Husband's business losses. Presumably, Wife reviewed and signed the tax return each year and had the opportunity to see for herself whether or not the parties would in fact receive a tax refund. Further, the tax refund was deposited into a jointly held bank account, where Wife had the ability to review and make withdraws. The Court denies Wife's request to return the entire tax refund to her.

Appellant's App. Vol. II, p. 13. In light of the evidence presented by the parties, we cannot say that this finding is clearly erroneous.

[29] Wife argues on appeal that she is entitled to recover the requested $7744.53 for the parties' tax refunds under a theory of promissory estoppel. Again, because Wife did not raise this theory of recovery below, she is precluded from successfully asserting this theory of recovery on appeal. *See In re K.S.*, 750 N.E.2d at 834 n.1.

## D. Parties' Joint-Savings Account

[30] Wife last contends that the trial court erred by failing to enter judgment against Husband for $26,759.38, *i.e.*, half of the funds from the sale of Husband's farm which were placed in the Crossroads Account. In support, Wife claims that Husband had agreed to maintain a retirement savings account for the parties'

shared enjoyment. Wife also claims that because Husband had added her name to the account, she was entitled to half of the funds therein.

[31] Review of the record clearly indicates that Husband's farm was property covered by the parties' Agreement, meaning that Wife did not have and would not acquire any interest in the property. Specifically, the parties' Agreement stated that "[i]t is mutually declared that it is the intent of both parties that by virtue of said marriage neither one *shall have or acquire* any right, title or claim in and to the real or personal estate of the other[.]" Petitioner's Ex. 1, p. 3 (emphasis added).

[32] Husband sold the farm in April of 2013. As a result of the sale of the farm, Husband was to receive semi-annual cash payments. After completing the sale, Husband opened the Crossroads Account. He placed at least one of the payments received in relation to the sale of the farm into this account. Husband used the funds in the Crossroads Account to pay for expenses incurred by him and Wife, such as dinners out and a trip to Dayton. In April of 2014, at Wife's insistence, Husband added Wife's name to the Crossroads Account. Husband testified that to his knowledge, the only money ever deposited into the Crossroads Account were the funds received in connection to the sale of the farm.

[33] At some point prior to the evidentiary hearing, the Crossroads Account was overdrawn. The trial court recognized that Husband was responsible for the overdraft fees. Given the clear language of the parties' Agreement stating that

Wife shall not acquire any interest in Husband's property, *i.e.*, the farm, we cannot say that the trial court erred in denying Wife's request for half of the proceeds from the sale of the farm that were placed in the Crossroads Account. Wife's name was only added to the account at her insistence and she did not contribute any funds to the account. The trial court, seemingly recognizing that the funds deposited into this account were solely generated by the sale of the farm, and thus remained Husband's separate property, properly determined that Wife should not be held responsible for the overdraft of the account opened by Husband to hold these funds.

[34] As was the case above, Wife argues on appeal that she is entitled to recover the requested $26,759.38 from the proceeds of the sale of Husband's farm that were placed in the Crossroads Account under a theory of promissory estoppel. Again, because Wife did not raise this theory of recovery below, she is precluded from successfully asserting this theory of recovery on appeal. *See In re K.S.*, 750 N.E.2d at 834 n.1.

# Conclusion

[35] Because we disagree with Wife's contention that the trial court committed reversible error in denying her request that the trial court enter a $71,690.22 judgment against Husband, we affirm.

[36] The judgment of the trial court is affirmed.

Vaidik, C.J., and Brown, J., concur.