**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ROBERT W. WRIGHT**
Dean Webster Wright LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**JOHN J. MOORE**
**JEFFREY C. CONNER**
Doninger Tuohy & Bailey LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MERRILL C. ROBERTS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1306-PL-294 |
| | ) | |
| UNLIMITED, LLC d/b/a REMAX UNLIMITED | ) | |
| and MATTHEW A. GUNNING, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
Cause No. 49D14-0805-PL-22780

July 25, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Merrill C. Roberts ("Seller") appeals the denial of an award of attorney's fees. He asserts the trial court abused its discretion in denying him attorney's fees he incurred when defending against what he alleges was a frivolous lawsuit filed by Unlimited, LLC and Matthew A. Gunning (collectively, "Brokers"). We affirm.

## FACTS AND PROCEDURAL HISTORY

Prior to June 26, 2006, Seller and Gunning, a real estate agent for Unlimited, LLC, met to discuss listing Seller's property, located on West Washington Street in Indianapolis ("West Washington Property"). Seller's property consisted of two adjacent lots connected by a dirt track and the lots held a strip club and a commercial building. Gunning believed Seller was interested in selling the entire property, which Gunning believed was one parcel known as 8013 W. Washington. There was no indication the property consisted of two lots, each to be sold separately.

Gunning created a Listing Contract that indicated the property at "8013 W. Washington," (App. at 40), would be listed for $10,000,000.00. (*Id*.) The Listing Contract stated Brokers were to be paid a 5.5% commission when the property was sold or when Brokers procured "a written offer from a Buyer who is ready, willing, and financially able to consummate the proposed transaction concerning the Property . . . and Seller refuses to accept the offer." (*Id.* at 40.) The Listing Contract indicated the legal description of the property would be "attached as Exhibit 'A,'" (*id.*), but when the contract was signed, Exhibit A was not attached.

After creating the Listing Contract, Gunning obtained the records required to verify

2

the title of the West Washington Property. The title work revealed the West Washington Property consisted of two addresses: 8013 and 8009 W. Washington. (Def.'s Ex. 108.) Gunning amended the Listing Contract to show "the Property" was both "8009 and 8013 W. Washington." (App. at 44.) Seller never accepted or rejected the amendment.

On May 24, 2007, Gunning gave Seller a written letter of intent from Charles Weisblat, a potential buyer, indicating intent to purchase "8009 & 8013 West Washington Street" for $8,100,000.00. (Pl.'s Ex. A.) Seller responded: "it is a very good offer but at this time I can't accept any thing [sic] less that [sic] what I put my sale price at." (*Id.*) Gunning submitted a second letter of intent from Weisblat to Seller which offered $10,000,000.00 for "8009 & 8013 West Washington Street." (*Id.*) Seller did not respond.

After two and a half months, Brokers contacted Seller requesting their commission for procuring a full list price offer. Seller responded that the letter of intent was not a purchase offer because it had a disclaimer that stated, "[t]he parties will not be bound in any manner or under any theory until the Purchase and Sales Contract is fully negotiated and executed by both parties." (Pl.'s Ex. B.)

On November 20, 2007, Brokers sent another letter to Seller containing Weisblat's ten-million-dollar offer for both properties. The letter was titled "Letter of Purchase Offer," it stated it was a "formal proposal," and it was signed by Weisblat. (Pl.'s Ex. C.) Seller responded by asserting the letter was not a Purchase Offer and telling the Brokers they had until December 5, 2007, to produce a proper Purchase Offer. On December 5, 2007, Brokers sent another letter to Seller and attached thereto was a "Real Estate Purchase Agreement"

3

from Weisblat that included the same details. Seller rejected the offer and indicated the intent to withdraw the property listing.

On May 21, 2008, Brokers filed suit against Seller alleging they produced a ready, willing, and financially able buyer pursuant to the terms of the listing agreement and thus they were entitled to the commission. In this lawsuit, Brokers made two claims: a breach of contract claim for Sellers breaking the contract to pay commission, and a promissory estoppel claim to account for the ongoing promise to pay commission after the contract expired but during negotiations between the parties. There was no activity on the case, so on August 2, 2010, the trial court scheduled a Trial Rule 41(E) hearing.[1] In response, Brokers filed a Praecipe for Jury Trial, which the court denied because the parties had not filed a joint case management order.

On September 29, 2010, the trial court held the Trial Rule 41(E) show cause hearing. Brokers did not attend the hearing because he was under the impression the notice requirement of Rule 41(E) had already been satisfied. At the hearing, Seller moved to dismiss the complaint, which the trial court granted with prejudice. Seller then asked for attorney's fees.

Brokers filed a Motion to Set Aside the Rule 41(E) dismissal. Following a hearing, the trial court denied the Motion to Set Aside the Rule 41(E) dismissal. On March 26, 2013, the trial court held a hearing on Seller's Petition for Fees and Costs and concluded that

---

[1] Trial Rule 41(E) states: "when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case."

4

"[Seller] is not entitled to recover his fees and costs pursuant to [Ind. Code] § 34-52-1-1" because Brokers' lawsuit was not frivolous. (App. at 18.)

## DISCUSSION AND DECISION

The trial court *sua sponte* entered findings of fact and conclusions of law regarding whether Seller was entitled to attorney's fees. In this situation,

> the specific findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial.
> We apply the following two-tier standard of review to *sua sponte* findings and conclusions: whether the evidence supports the findings, and whether the findings support the judgment. Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility.

*Trust No. 6011, Lake County Trust Co. v. Heil's Haven Condos. Homeowners Ass'n*, 967 N.E.2d 6, 14 (Ind. Ct. App. 2012), *trans. denied*.

A court may award attorney's fees to the prevailing party if the party that filed the lawsuit:

(1)     brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2)     continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3)     litigated the action in bad faith.

Ind. Code § 34-52-1-1(b).

5

Seller asserts the breach of contract claim was frivolous because the Listing Contract specifically stated Seller was selling only "8013 W. Washington" for $10,000,000.00, (App at 40), while the offer submitted was for the sale of both 8009 *and* 8013 W. Washington for $10,000,000.00. In addition, Seller states the promissory estoppel claim is frivolous because Ind. Code § 32-21-1-10 requires a contract for the payment of a real estate sales commission to be in writing. Neither claim was frivolous.

We deal first with the contract claim. The trial court found that 8009 and 8013 W. Washington were adjacent to one another and were sometimes referred to as the West Washington Property as a whole, (App. at 8), which finding is supported by evidence. Seller signed a Confidentiality Agreement that stated he was "contemplating the sale . . . [of] 8013 West Washington Street" and that he intended in the initial negotiations to sell "10 acres + or − [,] Plus Business" for $12,000,000.00. (*Id.* at 48-49.) After this, a detailed Listing Contract was created and approved by both parties. (*Id.* at 40-45.) This Listing Contract indicated the address of the property was 8013 W. Washington, which was to be explained in Exhibit A, and it was listed for $10,000,000.00. (*Id.*) The title work indicated both 8009 and 8013 W. Washington were included in the ten acres, and Gunning created Exhibit A of the Listing Contract to reflect the property consisted of both 8009 and 8013 W. Washington. Seller neither accepted nor objected to that change. The evidence suggests there was confusion as to what "8013 W. Washington" included and, based on this evidence, the trial court concluded Brokers were led to believe the entire property was being listed for $10,000,000.00.

6

The trial court also found that throughout the offers and rejections, Seller did not mention that 8009 was not to be sold or that $10,000,000.00 was not the listing price for the entire property consisting of both addresses. (App. at 12-14.) This is supported by Plaintiff's Exhibits A through F showing the communication of offers and rejections between Gunning and Seller.

In addition, the promissory estoppel claim is not frivolous. Promissory estoppel permits recovery where there is no contract. *Ind. Bureau of Motor Vehicles v. Ash, Inc.,* 895 N.E.2d 359, 367 (Ind. Ct. App. 2008). Brokers assert "[Seller] made promises (express and/or implied) to continue to be bound by the Listing Contract after June 27, 2007 and to pay Gunning his earned commission per the Listing Contract." (App. at 23.)

Although these sales negotiations occurred after the Listing Contract expired on June 27, 2007, they were in writing and therefore are not invalid under Ind. Code § 32-21-1-10. *See* (Pl.'s Ex. A-F) (showing all communications of offers and rejections after June 27, 2007, are in writing). Although there was confusion as to what "8013 W. Washington" encompassed, there was no confusion as to when the contract expired; the agreement is explicit that it is enforceable until June 27, 2007. Brokers listed the elements of a promissory estoppel claim and designated evidence the promises were in writing as part of their complaint. *See e.g., First Nat. Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 954 (Ind. 1991) (establishing the elements of promissory estoppel).

These findings support the trial court's decision to deny Seller's attorney's fees on the grounds Brokers' claim was:

7

(1)     not "frivolous" because it was not made for the purpose of harassing or maliciously injuring [Seller], and counsel for [Brokers] was able to make a good faith and rational argument on the merits of the action;

(2)     not "unreasonable" because, based on the totality of the circumstances . . . a reasonable attorney would consider [Brokers'] claim for a commission worthy of litigation and justified; and

(3)     not "groundless" because the evidence supports the claim for commission owed, relied on and presented by [Brokers].

(Br. of Appellee at 7, *citing* App. at 17-18.)  Therefore, the trial court did not err in denying attorney's fees to Seller because Brokers' lawsuit was not frivolous, unreasonable, or groundless.  Accordingly, we affirm.

Affirmed.

VAIDIK, C.J. and RILEY J., concur.