FILED

Jul 12 2023, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Mark J.R. Merkle
Blake P. Holler
Matthew C. Branic
Krieg DeVault LLP
Carmel, Indiana

ATTORNEY FOR APPELLEES

Donald W. Shelmon
Rensselaer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AgReliant Genetics, LLC, <br> *Appellant-Defendant,* <br><br> v. <br><br> Gary Hamstra Farms, Inc., Woolever Farms, Inc., Klemp Farms, Inc., <br> *Appellees-Plaintiffs.* | July 12, 2023 <br><br> Court of Appeals Case No. 22A-CC-1827 <br><br> Appeal from the Jasper Circuit Court <br><br> The Honorable John D. Potter, Judge <br><br> Trial Court Cause No. 37C01-1803-CC-170 |

**Opinion by Judge Tavitas**
Judges Crone and Weissmann concur.

**Tavitas, Judge.**

## Case Summary

For several years, three Indiana Farms—Gary Hamstra Farms, Inc. ("Hamstra"), Woolever Farms, Inc. ("Woolever"), and Klemp Farms, Inc. ("Klemp") (collectively "the Farmers")—grew seed corn for AgReliant Genetics, LLC ("AgReliant"). In 2018, AgReliant informed the Farmers that AgReliant did not plan to grow seed corn that year, even though AgReliant's agent had already spoken with the Farmers about setting aside acreage to grow seed corn that year. The Farmers brought an action for breach of contract and promissory estoppel against AgReliant. Following a bench trial, the trial court entered judgment in favor of the Farmers on a theory of promissory estoppel.

AgReliant appeals and claims that: (1) the trial court clearly erred in granting judgment on a claim of promissory estoppel; and (2) the trial court clearly erred by awarding damages based on the benefit of the bargain instead of the expenses the Farmers actually incurred relying on AgReliant's statements. We conclude that the trial court did not clearly err in determining that the Farmers could recover under promissory estoppel, but we agree with AgReliant that the trial court improperly awarded damages based on the benefit of the bargain instead of reliance damages. Accordingly, we affirm in part, reverse in part, and remand.

## Issues

AgReliant presents two issues, which we restate as:

I. Whether the trial court clearly erred in finding that AgReliant made promises to the Farmers with the expectation that the Farmers would rely thereon.

II. Whether the trial court improperly awarded benefit-of-the-bargain damages instead of reliance damages.

## Statement of Facts

This case involves three farms in Jasper County, Indiana—Hamstra, Woolever, and Klemp. AgReliant is an agricultural corporation that markets crop seeds to farmers throughout the Midwest. AgReliant does not grow the seeds itself. Instead, it contracts with farmers to set aside certain land to grow seeds—in this case, seed corn. Growing seed corn is different than growing grain crops, such as field corn or soybeans. Growing seed corn requires that the seed corn crops be isolated from other corn varieties to prevent cross-pollination. Farmers who grow seed corn also must have knowledge of the crops being grown in neighboring farms to prevent cross-pollination. Growing seed corn requires two spring plantings: female seeds are planted in rows of four, with the fifth row skipped. Male seeds are then planted in the skipped rows at a later date. Because of the preparation required to plant seed corn, farmers need significant advance notice to prepare a crop plan for the seed corn. Farmers start planning for the next year's seed crops during the harvest of the current year, in cooperation with a seed corn company such as AgReliant.

[5] Although planting seed corn requires advance planning and work, it also provides several benefits to the Farmers. For example, in years prior, AgReliant paid for all fertilizers, pesticides, herbicides, and the cost of spraying the chemicals. AgReliant also paid for detasseling[1] and harvesting costs. Because the seed corn is purchased by AgReliant, the Farmers need not store the corn. Seed corn is also worth more than regular field corn sold for grain. Because of the higher sale price and lower production costs to the farmer, growing seed corn is a substantial benefit to the Farmers.

[6] In the present case, Hamstra grew seed corn for AgReliant from 2006 to 2017, except for the 2013 season. Woolever grew seed corn for AgReliant from 1992 to 2017. And Klemp grew seed corn for AgReliant from 2010 to 2017.

[7] Since 2007, the Farmers communicated with AgReliant's field representative Clif Jones. In years prior to 2017, Jones had obtained verbal commitments each fall from the Farmers to plant seed corn for the upcoming season. The final acreage to be planted, however, would not be determined until January or February of the next year, by which time AgReliant had determined the amount of seed corn it would need.

---

[1] A "tassel" is the pollen-bearing inflorescence at the summit of a stalk of corn. *See* "Tassel," American Heritage Dictionary (5th ed. 2022). Detasseling involves "pulling the tassels off the top of the corn," which "improves the productivity of the seed corn when it is actually planted in the following growing season." *Rieheman v. Cornerstone Seeds, Inc.*, 671 N.E.2d 489, 491 (Ind. Ct. App. 1996), *trans. denied*.

[8] Eventually, the parties would sign a Production Agreement in January or February, and this agreement included a Schedule B that listed the actual acreage needed, the variety of corn to be grown, the number of male and female rows to be planted, and the price to be paid. Schedule B was typically signed in the spring of the year at issue. Though Schedule B was prepared and executed by the Farmers before planting in the spring, AgReliant did not sign the Production Agreement until after the crops were planted, which was often as late as mid-summer.[2] Accordingly, final, written contracts were not fully executed until after substantial performance by the Farmers had occurred.

[9] At issue here are the chain of events after the 2017 harvest. That fall, Jones contacted the Farmers about what acreage and which land would be used to grow seed corn for AgReliant in 2018. Jones approached Woolever in late August or September 2018 during harvest season and "named the fields that he expected [Woolever] to give him for the following year by farm name." Tr. Vol. II p. 145. Jones even provided Woolever with a map listing the fields or farms he wanted Woolever to use to grow seed corn for the upcoming 2018 season. Woolever testified that this was the same procedure AgReliant had used for over twenty-five years to secure acreage on which to grow seed corn. In January 2018, Jones contacted Woolever and requested an additional 158 acres. Thus, Woolever set aside over 500 acres to plant AgReliant seed corn,

[2] For example, the final 2017 contract between Klemp and AgReliant was not signed by AgReliant until June 5, 2017, and the 2016 contract between Hamstra and AgReliant was not signed by AgReliant until July 13, 2016.

and included this in his 2018 crop plan, which was initially prepared in September 2017, in order to get the best discounts for the seed and supplies for his other fields.

[10] Jones met with Klemp in the fall of 2017 and asked him to set aside 300 acres to grow seed corn for AgReliant. Jones also gave Klemp maps of the specific farms or fields that Jones wanted Klemp to use to grow the seed corn. Jones initially told Klemp that he was unsure if AgReliant would need to grow seed corn on an area known as the "Walters Farm," but later confirmed that he wanted to "lock that in." Tr. Vol. II p. 103. Klemp's testimony was corroborated by a text message conversation between Klemp and Jones. In this text message, Klemp stated he was "checking to make sure Walters is a go for seed corn," to which Jones replied, "Yes, we'd still like to put that in seed corn." Ex. Vol. IV, Plaintiff's Ex. 11. Based on Jones's statements, Klemp prepared a 2018 crop plan that included 400 acres set aside to grow AgReliant seed corn. *Id*., Plaintiff's Ex. 10. Jones met with Klemp later in the fall of 2017 to confirm that Klemp wanted to grow seed corn for AgReliant in 2018. Jones ultimately asked Klemp to set aside 400 acres for seed corn and the isolation areas surrounding the corn. Klemp accordingly planned his next seasons' crop around the seed corn and purchased other seeds for the remainder of his land.

[11] Jones contacted Hamstra in October 2017 during the harvest and requested that Hamstra set aside 700 acres to grow AgReliant seed corn in 2018. Jones later told Hamstra that AgReliant "needed some more - a variety grown and wanted

to know if [Hamstra] had room to do another 160 acres." Tr. Vol. II p. 205. Hamstra agreed to do so and prepared his 2018 crop plan to include growing seed corn for AgReliant on the fields requested by Jones.

[12] Although Jones was making these plans with the Farmers, AgReliant decided not to grow seed corn in Indiana in 2018. In late December 2017, Jeremy Thompson, Jones's predecessor field agent and now a location manager and Jones's supervisor at AgReliant, learned of AgReliant's decision to cease growing seed corn in Indiana. Thompson, in turn, informed Jones of AgReliant's decision in early to mid-January 2018. On January 27, 2018, Thompson and Jones met with each of the farmers to inform them personally that AgReliant would not be using their services to grow seed corn that year. Because of the long-term relationship that Thompson and Jones had with the Farmers, "it was hard for them to tell [the Farmers] that." *Id*. at 207.

[13] Caught unaware and having already prepared their upcoming crop plans to include growing seed corn for AgReliant, the Farmers scrambled to buy seeds for their land on which they had planned to grow seed corn. This caused them to miss out on discounts they could have received had they purchased the seeds in the fall of 2017. Woolever was unable to contract with any other seed-corn companies due to the late date. Woolever ended up planting 386 acres of field corn and 159 acres of soybeans on the 545 acres he had set aside for AgReliant's seed corn. In 2017, Woolever earned income of $944 per acre growing AgReliant's seed corn with expenses of $185 per acre, for a net profit

of $759 per acre.  In 2018, Woolever earned a net profit of $162,062.10 for the 386 acres of field corn and $61,119.60 for 159 acres of soybeans, for a grand total of $223,181.70.  Assuming the same income and expenses from 2017, if Woolever planted AgReliant's seed corn, Woolever's 2018 profits would have been $413,655, which is $190,473.30 more than Woolever earned in 2018.  These calculations are listed in the chart below:

| Woolever | | | | |
|---|---|---|---|---|
| **2017** | | | **2018** | |
| **Seed corn** | | | **Field Corn** | **Soybeans** |
| Income | $ 944.00 | | $ 810.75 | $ 561.00 |
| Expenses | $ 185.00 | | $ 390.90 | $ 176.60 |
| Net Profit | $ 759.00 | | $ 419.85 | $ 384.40 |
| Total Acres | 545 | | 386 | 159 |
| **Total Profit** | **$ 413,655.00** | | $ 162,062.10 | $ 61,119.60 |
| | | | **Total Profit** | **$ 223,181.70** |
| | | | | |
| | | | **2018 Difference** | **$ 190,473.30** |

[14] In 2018, Klemp planted 278 acres of field corn and 122 acres of soybeans on the land he had originally planned to grow AgReliant seed corn.  Klemp's net profit per acre for the field corn was only $50.76, and the net profit per acre for the soybeans was a mere $23.74, for a total net profit of $14,111.28 for field corn and $2,896.28 for soybeans.  This was in stark contrast to the profit of $483.50 per acre that Klemp earned in 2017 planting AgReliant's seed corn.  Assuming the same profit per acre from 2017 would have applied in 2018, if Klemp planted AgReliant's seed corn, he would have earned $193,400 instead of the

$17,007.56 he earned from field corn and soybeans—a difference of $176,392.44. These calculations are listed in the chart below:

| Klemp | | | | |
|---|---|---|---|---|
| **2017** | | | **2018** | |
| **Seed Corn** | | **Field Corn** | **Soybeans** | |
| Income | $ 888.50 | $ 655.50 | $ 419.65 | |
| Expense | $ 405.00 | $ 604.74 | $ 395.91 | |
| Net Profit | $ 483.50 | $ 50.76 | $ 23.74 | |
| Total acres | 400 | 278 | 122 | |
| **Total Profit** | **$ 93,400.00** | **$ 14,111.28** | **$ 2,896.28** | |
| | | **2018 Total** | **$ 17,007.56** | |
| | | | | |
| | | **2018 Difference** | **$ 176,392.44** | |

[15] Using similar calculations, Hamstra earned $222,771.85 less in 2018 compared to 2017, when Hamstra grew seed corn for AgReliant:

| Hamstra | | | | |
|---|---|---|---|---|
| **2017** | | | **2018** | |
| **Seed corn** | | **Field Corn** | **Soybeans** | |
| Income | | $ 711.62 | $ 308.10 | |
| Expenses | | $ 372.64 | $ 166.59 | |
| Net Profit | $ 819.22 | $ 338.98 | $ 141.51 | |
| Total acres | 406.33 | 266.38 | 139.95 | |
| **Total Profit** | **$ 332,873.66** | **$ 90,297.49** | **$ 19,804.32** | |
| | | **2018 Total** | **$ 110,101.82** | |
| | | | | |
| | | **2018 Difference** | **$ 222,771.85** | |

[16] On March 8, 2018, the Farmers filed a complaint against AgReliant claiming breach of contract. On January 25, 2021, the trial court permitted the Farmers to add a claim of promissory estoppel. A bench trial was held on February 24

and 25, 2022. On AgReliant's motion, the trial court ordered the parties to submit proposed findings of fact and conclusions thereon.

[17] On July 5, 2022, the trial court entered its findings of fact and conclusions thereon and found that no contract was formed between the parties. With regard to the Farmers' claim of promissory estoppel, however, the trial court concluded:

> Promissory estoppel encompasses the following elements: "(1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *See Citizens Fin. Servs. v. Innsbrook Country Club, Inc.*, 833 N.E.2d 1045, 1056 (Ind. Ct. App. 2005). Those elements are all present. In that case Citizens [n]ever used the term "promise" but representations were made about future conduct that would occur by Citizens which didn't. Just as in this case the plaintiffs relied on the request for acreage by AgReliant. [AgReliant] knew or should have known based upon the parties' courses of dealing that the plaintiffs would rely on the request to formulate their crop plan for the coming year. Their reliance was clearly reasonable and based upon the same course of action the parties took each year. Their reliance was substantial and to their financial detriment as damages will show below. Enforcement of that promise is necessary to make the plaintiffs whole for the year 2018 or an injustice would result.

Appellant's App. Vol. II p. 28.

[18] The trial court calculated the damages based on the net profits the Farmers would have earned in 2018 had they planted AgReliant's seed corn according to

their 2017 profits, less the profits the Farmers actually realized for 2018. Specifically, the trial court awarded damages to Hamstra in the amount of $222,771.85, to Woolever in the amount of $190,473, and to Klemp in the amount of $176,396, for a total damages award of $589,640.85. AgReliant now appeals.[3]

## Facts and Procedural History

### I. Standard of Review

[19] Here, at AgReliant's request, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. We, therefore, apply a two-tiered review. *Wysocki v. Johnson*, 18 N.E.3d 600, 603 (Ind. 2014). We will "affirm when the evidence supports the findings, and when the findings support the judgment." *Id.* We will not "set aside the findings or judgment unless [they are] clearly erroneous," and we must give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* (citing Ind. Trial Rule 52(A)). "Findings of fact are clearly erroneous only when they have no factual support in the record." *Id.* And a judgment is clearly erroneous "if it applies the wrong legal standard to properly found facts." *Id.* at 604. On

---

[3] We held oral argument in this case on June 2, 2023, at the French Lick Springs Hotel in French Lick, Indiana, during the Indiana State Bar Association's Solo and Small Firm Conference. We extend our thanks to the State Bar Association, the hotel, and their staff for their hospitality, and we thank counsel for the quality of their written and oral advocacy.

appeal, we review the trial court's legal conclusions de novo. *Gittings v. Deal*, 109 N.E.3d 963, 970 (Ind. 2018).

## II. *Promissory Estoppel*

[20] AgReliant disputes the trial court's conclusion that the Farmers could recover under a theory of promissory estoppel.[4]

> A party asserting promissory estoppel must establish five elements: "(1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise."

*Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 581 (Ind. 2007) (quoting *First Nat'l Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991)).

[21] AgReliant contends that there was no evidence to support the trial court's determination that its agent made any promises to the Farmers or that AgReliant expected the Farmers would rely on any promise that was made. We address these contentions in turn.

---

[4] AgReliant obviously does not challenge the trial court's conclusion that the parties did not enter into a contractual agreement. The Farmers do not cross-appeal the trial court's ruling regarding the lack of a contractual agreement.

*1. Promise*

[22] AgReliant contends that there was no evidence to support the trial court's determination that its agent made any promises to the Farmers. For purposes of promissory estoppel, a promise is a "voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that the promisor will perform some action or refrain from some action in the future.'" *Kacak v. Bank Calumet, N.A.*, 869 N.E.2d 1239, 1242 (Ind. Ct. App. 2007) (quoting *Medtech Corp. v. Ind. Ins. Co.*, 555 N.E.2d 844, 847 (Ind. Ct. App. 1990)).

[23] AgReliant claims that Jones "made no promises or guarantees during [his] preliminary conversations" with the Farmers. Appellant's Br. p. 26. To support its position, AgReliant cites the testimony of Klemp and Woolever, who testified that Jones did not use the word "promise" or "guarantee" when he discussed AgReliant's plans to use the Farmers to grow seed corn in the upcoming 2018 growing season. Tr. Vol. II pp. 126, 180. Jones also testified that he never made any promises. AgReliant claims that Jones could not have made such promises on its behalf because Jones did not yet know at that time how many acres AgReliant would need for the following year.

[24] A promisor, however, need not use the words "promise" before there can be a finding of promissory estoppel. "Promissory estoppel is based on the underlying principle that 'one who **by deed or conduct** has induced another to act in a particular manner will not be permitted to adopt an inconsistent

position, attitude, or course of conduct that causes injury to such other.'" *SWL, L.L.C. v. NextGear Cap., Inc.*, 131 N.E.3d 746, 754 (Ind. Ct. App. 2019) (quoting *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001)) (emphasis added); *see also* 28 AM. JUR. 2D, *Estoppel and Waiver* § 51 (2023 Update) ("[I]t is recognized that no special form of words is necessary to create a promise, for purposes of a promissory estoppel claim[.]").[5] Thus, the fact that Jones did not use the word "promise" or similar words is not dispositive.

[25] To the contrary, there was evidence from which the trial court, sitting as the trier of fact, could reasonably conclude that Jones, by his word and conduct, effectively promised the Farmers that AgReliant would use the Farmers' land to grow seed corn in the 2018 season. Indeed, Klemp testified, "I would consider it a promise when, every year in the – the previous years, we went through the same procedure. You know, he wanted the acres and we [] accepted his offer to take them. So I would consider that a promise." Tr. Vol. II p. 126.

[26] As in past years, Jones approached the Farmers during the 2017 harvest and requested that the Farmers set aside acreage to grow AgReliant seed corn. Jones even requested the use of specific fields and acreage and gave the farmers maps listing the farms and fields AgReliant wanted to use. After his initial

---

[5] Other courts have reached similar conclusions. *See, e.g.*, *G & A Land, LLC v. City of Brighton*, 233 P.3d 701, 704 (Colo. App. 2010) (noting that a promise may be stated in words or inferred from conduct); *First Nat'l Bank of Cicero v. Sylvester*, 554 N.E.2d 1063, 1070 (Ill. App. Ct. 1990) (noting that for purposes of promissory estoppel, "[a]n express promise is not required," and a promise may instead be "inferred from conduct and words.").

requests, Jones even contacted Klemp and Woolever and asked them if they would reserve additional acreage to grow seed corn. This was the same procedure AgReliant had used for years and even decades to secure acreage from the Farmers to grow seed corn. Considering only the evidence favorable to the trial court's judgment, and the reasonable inferences that can be drawn therefrom, we cannot say that the trial court clearly erred in determining that AgReliant effectively or impliedly promised the Farmers that AgReliant would grow seed corn on the acreage and fields in 2018.

*2. Expectation of Reliance*

AgReliant next claims that there was no evidence to support a finding that AgReliant **expected** that the Farmers would rely on any promise its agent made because, in years prior, the parties always eventually executed a written contract regarding the seed corn. AgReliant argues that it had to subjectively expect the Farmers to rely on its statements. However, our Supreme Court has adopted the following provision of Restatement (Second) of Contracts regarding promissory estoppel:

> A promise which the promissor **should reasonably expect to induce action or forbearance on the part of the promisee or a third person** and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . .

RESTATEMENT (SECOND) OF CONTRACTS § 90 (quoted in *First Nat'l Bank of Logansport*, 577 N.E.2d at 954) (emphasis added). Thus, the question is not

whether AgReliant, or its agents, subjectively expected the Farmers to rely on its statements; instead, the question is whether AgReliant should have "reasonably expect[ed] to induce action or forbearance" on the part of the Farmers," and did, in fact, "induce such action or forbearance[.]" *Id.*

[28] Again, considering only the evidence and reasonable inferences favoring the trial court's judgment, the trial court did not clearly err by concluding that AgReliant made a promise upon which it should have reasonably expected the farmers to rely. For years, AgReliant, through its agents, would contact the farmers during the harvest season and request reservation of certain fields to grow seed corn. The Farmers would agree and formulate their crop plans to include growing AgReliant seed corn. During the 2017 harvest season, AgReliant, through its agent Jones, again requested that the farmers set aside certain fields to grow seed corn. Although AgReliant claims that it could not know the precise acreage it would ultimately need, Jones did indicate in the fall of 2017 the acreage needed for 2018; even later, he contacted Woolever and Klemp and requested additional acreage. Given the prior course of dealing between the parties, and Jones's statements and conduct, the trial court could reasonably conclude that AgReliant should have known that the Farmers would rely on statements and requests made in 2017.

[29] AgReliant argues that the trial court could not rely on the prior course of dealing between the parties to determine whether the Farmers established the requirements of promissory estoppel. AgReliant contends that the course of

dealing between the parties is only relevant in contractual disputes. We disagree.

[30] As noted above, "[p]romissory estoppel is based on the underlying principle that 'one who **by deed or conduct** has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other.'" *SWL, L.L.C.*, 131 N.E.3d at 754 (quoting *Brown*, 758 N.E.2d at 52). Although we have found no Indiana court that has explicitly stated that the prior course of dealing may be considered, other jurisdictions have reached this conclusion. *See Lige Dickson Co. v. Union Oil Co. of Calif.*, 635 P.2d 103, 107 (Wash. 1981) (noting that, to prove the elements of promissory estoppel, a promisee may offer evidence of the course of dealing between the parties) (en banc); *Peoples Nat'l Bank of Little Rock v. Linebarger Const. Co.*, 240 S.W.2d 12, 17 (Ark. 1951) (considering the course of dealing between the parties in concluding that defendant bank was estopped from denying the promises it made to the plaintiff); *see also* Daniel A. Farber, John H. Masterson, *Beyond Promissory Estoppel: Contract Law and the "Invisible Handshake,"* 52 U. CHI. L. REV. 903, 932 (Fall 1985) ("A promise may be stated in words, either orally or in writing, or may be inferred wholly or partly from conduct. Both language and conduct are to be understood in the light of the circumstances, including course of performance, **course of dealing**, or usage of trade.") (emphasis added) (citation omitted). Accordingly, we cannot fault the trial court for looking to the prior course of dealing between the

parties in determining whether the Farmers had established the elements of promissory estoppel.

[31] AgReliant also argues that the dealings between the parties show that the parties always entered into written contracts and that their oral discussions were not binding on either party. The fact that the parties eventually signed written contracts is indeed relevant to the determination of the reasonableness of the reliance; but just because the parties eventually signed written production agreements in prior years does not negate the fact that the Farmers relied on the statements and conduct of AgReliant's agents in the fall of 2017 based on their prior dealings with AgReliant.[6]

[32] AgReliant also claims that, until the parties executed Schedule B, the specific number of acres to be planted could vary, but once Schedule B was executed, the acres needed and prices paid could not change. Thus, AgReliant claims, it could not have known that the Farmers would rely on Jones's statements in the fall of 2017 regarding the amount of acreage AgReliant would request for seed corn the following year. But this overlooks Jones's request to the Farmers for specific fields. Although the precise acreage may not have been established, it

---

[6] AgReliant notes that, in 2012, Hamstra initially indicated to Jones that he was willing to grow seed corn for AgReliant in 2013. Hamstra, however, later told Jones that, due to a labor shortage, he could not grow seed corn during the upcoming season. AgReliant took no action against Hamstra at that time. AgReliant takes this as evidence that the oral discussions between the parties were never meant to be binding. We disagree. First, Hamstra testified that he informed Jones that he would be unable to grow seed corn for AgReliant very early on in the process, specifically "in the fall," and "at the time that [AgReliant] harvest[ed] the 2012 crop." Tr. Vol. II pp. 202. Moreover, the fact that AgReliant did or did not seek any recourse against Hamstra in 2012 does not mean that AgReliant's statements and conduct in 2017 did not constitute a promise to the Farmers upon which they could reasonably rely.

is clear from the evidence that Jones told the Farmers that AgReliant planned to use hundreds of acres of the Farmers' land to grow AgReliant seed corn in 2018.

[33] Additionally, although the parties typically executed Schedule B before planting in the spring, AgReliant did not sign the Production Agreement until after the crops were planted. Accordingly, final, written contracts were not fully executed until after substantial performance by the Farmers had occurred. Thus, the fact that the parties had not yet signed Schedule B does not preclude a finding of promissory estoppel.

[34] Furthermore, there was ample evidence showing that the Farmers did, in fact, rely upon AgReliant's promises. The Farmers testified that they not only set aside acreage to grow AgReliant's seed corn but also delayed purchasing other seeds and fertilizers necessary to grow other crops. The Farmers also testified that they had already developed marketing plans around the assumption that they would grow seed corn for AgReliant and delayed purchasing the materials required to plant other non-AgReliant crops.

[35] We find ample evidence supporting the trial court's finding that this reliance was reasonable. The question of what is reasonable is generally one for the trier of fact. *Yates v. Kemp*, 979 N.E.2d 678, 683 (Ind. Ct. App. 2012) (citing *Lesh v. Chandler*, 944 N.E.2d 942, 951 (Ind. Ct. App. 2011)), *trans. denied*. As detailed above, for years AgReliant had approached the Farmers during the harvest season to ask them to grow seed corn, the Farmers would agree, and AgReliant

would use the Farmers to grow its seed corn. We cannot say that the trial court's factual determination that the Farmers reasonably relied on AgReliant's statements and conduct was clearly erroneous.[7]

[36] For all of these reasons, the trial did not clearly err in finding that the Farmers established the elements of promissory estoppel.

### III. Damages

[37] AgReliant argues that the trial court used an improper method to determine the Farmers' damages. If a party has established the elements of promissory estoppel, "justice does not require the award of lost profits." *First Nat'l Bank of Logansport*, 577 N.E.2d at 956. Instead, when determining the damages due under a theory of promissory estoppel, plaintiffs are entitled only to damages based on the plaintiffs' reliance. *See Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 122 (Ind. 1994) (holding that the remedy for a claim of promissory estoppel "is limited to damages actually resulting from the detrimental reliance"); *Hrezo v. City of Lawrenceburg*, 934 N.E.2d 1221, 1231 (Ind. Ct. App. 2010) ("A successful party [in a promissory estoppel claim] is entitled to reliance damages only."), *trans. denied*.

---

[7] The trial court also found that "[e]nforcement of [AgReliant]'s promise is necessary to make the [Farmers] whole for the year 2018 or an injustice would result." Appellant's App. p. 28; *see also See Biddle*, 860 N.E.2d at 581 (fifth element of a promissory estoppel claim is that "injustice can be avoided only by enforcement of the promise."). The Farmers argue that there was sufficient evidence to support the trial court's conclusion that injustice can be avoided only by enforcement of the promise. AgReliant, however, does not argue in its Appellant's Brief that the Farmers did not establish the injustice element of promissory estoppel. We, therefore, need not address this element.

[38]     AgReliant argues that the trial court erroneously based its award of damages on the difference between what the Farmers would have earned in net profits in 2018 had they planted AgReliant's seed corn and what they actually earned in 2018 growing replacement crops such as field corn and soybeans. This, AgReliant claims, gave the Farmers the full benefit of a bargain that did not exist. We agree.

[39]     In *First National Bank of Logansport*, 577 N.E.2d at 956, our Supreme Court cited with approval Illustration 8 from Section 90 of the Restatement (Second) of Contracts, which provides:

> A applies to B, a distributor of radios manufactured by C, for a "dealer franchise" to sell C's products. Such franchises are revocable at will. B erroneously informs A that C has accepted the application and will soon award the franchise, that A can proceed to employ salesmen and solicit orders, and that A will receive an initial delivery of at least 30 radios. A expends $1,150 in preparing to do business, but does not receive the franchise or any radios. **B is liable to A for the $1,150 but not for the lost profit on 30 radios**.

RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981) (emphasis added). Thus, under a theory of promissory estoppel, the Farmers could recover damages based only on their reliance on AgReliant's alleged promises—not the profits they would have realized had they grown seed corn for AgReliant in 2018. Yet this is how the trial court calculated damages here.

[40] The Farmers argue that, given the equitable nature of the remedy of promissory estoppel, the trial court had wide latitude to determine the damages to award. But our Supreme Court has clearly held that only reliance damages are recoverable under a theory of promissory estoppel, and we are bound by this holding.

[41] AgReliant also contends that the Farmers failed to present competent evidence of their reliance damages and instead asked only for benefit-of-the-bargain damages. At trial, however, the Farmers argued for recovery under a theory of both promissory estoppel and breach of contract, and the Farmers' evidence regarding damages focused on contractual damages. The trial court, however, found that there was no contract, a finding that the Farmers do not contest on appeal.

[42] AgReliant argues that we should, therefore, remand with instructions that the trial court enter an award of zero damages. This would obviously frustrate the purpose of the equitable remedy of promissory estoppel. The Farmers would have a victory in name only—a favorable judgment under a theory of promissory estoppel with no recoverable damages. The Farmers testified that, based on their reliance on AgReliant's promises, they lost the opportunity to receive certain discounts on seed and chemicals they would have otherwise been able to receive by purchasing such products earlier.

[43] Under these particular facts and circumstances, we opt to remand this cause for the trial court to properly determine the damages incurred by the Farmers based

upon their reliance on AgReliant's promises. *See Wolfe v. Eagle Ridge Holding Co., LLC.*, 869 N.E.2d 521, 528 (Ind. Ct. App. 2007) (reversing trial court's damages award and remanding for recalculation of plaintiff's actual damages or to award statutory liquidated damages).

## Conclusion

[44] The trial court did not clearly err in finding that the Farmers established the elements of promissory estoppel. The trial court did, however, improperly award benefit-of-the-bargain damages instead of reliance damages. We therefore affirm the trial court's judgment regarding promissory estoppel, reverse the trial court's damages award, and remand with instructions that the trial court determine the Farmers' reliance damages in the manner that the trial court deems appropriate.

[45] Affirmed in part, reversed in part, and remanded.

Crone, J., and Weissmann, J., concur.